June 6, 2013

<u>**VIA ELECTRONIC FILING**</u>

The Honorable Donna M. Ryu
United States Magistrate Judge
United States District Court for the Northern
District of California
1301 Clay Street
Courtroom 4, 3rd Floor
Oakland, CA 94612

Re:   <u>**Gragg v. Orange Cab Co., Inc. et al., Case No. 3:13-mc-80109-JSW**</u>

Dear Judge Ryu:

Counsel for plaintiff Torrey Gragg ("Gragg") and non-party Twilio, Inc. ("Twilio") (collectively, the "Parties") submit this joint letter pursuant to the Court's May 22, 2013 Order Vacating Motion to Quash Subpoena. The Parties attest that they have met and conferred by telephone regarding all issues in this discovery dispute, and that they could not resolve the dispute absent court intervention.

**I.       STATEMENT OF RELEVANT FACTS**

On March 5, 2012, in the United States District Court for the Western District of Washington, Gragg filed a purported class action against RideCharge and Orange Cab, alleging that the companies violated the Telephone Consumer Protection Act ("TCPA") by sending hundreds of thousands of text messages to individuals via an Automatic Telephone Dialing System ("ATDS"). *Torrey Gragg et. al. v. Orange Cab Company, Inc. and RideCharge (dba TaxiMagic)*, 2:12-CV-00576-RSL. RideCharge is a company that assists local taxi-cab companies by sending text message updates (called "dispatch notifications") and advertisements to individuals who have called for a taxi. Gragg alleges that the defendants sent him a text message on February 26, 2012 in violation of the TCPA and the various Washington statutes. Twilio was not involved in the transmission of the February 26, 2012 text message sent to Mr. Gragg.

Gragg, also on behalf of a purported class, claims that defendants sent text messages to tens of thousands of individuals without consent, and seeks damages under the TCPA and Washington statutes on behalf of the purported class for alleged violations of the statute. Gragg seeks to represent all individuals who have received an unsolicited text message from RideCharge or someone acting on RideCharge's behalf.

To violate the TCPA, a company must use an ATDS to send the text messages. An ATDS is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Throughout the relevant time period, RideCharge used various means to send text messages, including using various servers, modems, software, and personal computers.

Gragg alleges that, for part of the purported class period, RideCharge hired Twilio to send its text messages. Twilio operates like a telephone provider by providing a platform through which its customers can send text messages. Gragg alleges that, in September 2011, RideCharge used Twilio's

The Honorable Donna M. Ryu
Page 2

services to facilitate transmission of some of its text messages.  Gragg further alleges that RideCharge more fully transitioned to using Twilio's platform to send text messages in February 2012.  Currently, the parties are conducting class discovery.  The motion for class certification is due on June 14, 2013.

On March 19, 2013, Plaintiff sent Twilio a subpoena for thirteen categories of documents and ten deposition topics regarding the means and methods used by Twilio to send text messages on behalf of defendant RideCharge.  On April 3, 2013, Twilio timely objected to the subpoena.  Gragg did not move to compel discovery from Twilio.  Over the next several weeks, the parties engaged in several meet and confer conferences.

On May 1, 2013, Gragg then sent another subpoena, seeking information described in Exhibit A.

Twilio filed a motion to quash.  The Court denied the motion to quash without prejudice and directed the parties to submit a joint letter describing the issues if the parties were unable to resolve the dispute.

## II.   ARGUMENT

### A.   Dispute Regarding Relevance of Information Sought by the Subpoena

#### 1.   Twilio's Position

Twilio is not a party to the underlying lawsuit.  Federal Rules of Civil Procedure 26 and 45 protect non-parties from subpoenas that seek information outside the bounds of permissible discovery.  Rule 26(c) authorizes courts to protect targets of discovery from "annoyance, embarrassment, oppression, or undue burden or expense."  Rule 45 requires that any subpoena that "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden" shall be quashed or modified by the court which issued the subpoena.  Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv).

Non-parties subject to a subpoena "deserve extra protection from the courts" and "should not be forced to subsidize an unreasonable share of the costs of litigation to which they are not a party."  *High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) (awarding sanctions against party who failed to avoid burden to non-party) (citing *U.S. v. Columbia Broadcasting Sys., Inc.*, 666 F.2d 364, 372 (9th Cir. 1982)).  When assessing a motion to quash, the court should consider factors such as the relevance of the information requested and the burden on the subpoenaed party against the value of the information to the servicing party.  *Groce v. Claudat*, 2012 WL 1831574, at *2 (S.D. Cal. May 18, 2012).

The subpoena is not reasonably calculated to lead to the discovery of admissible evidence and should be quashed:

The Honorable Donna M. Ryu
Page 3

- First, Twilio operates like a telephone provider by providing a platform through which its customers can send text messages.[1]  As such, proprietary information about Twilio's software, its platform, and its operations, are irrelevant to the means and systems used by defendant RideCharge to transmit allegedly unsolicited text messages to any members of the putative class.  Information about the means and systems used by defendant RideCharge only can be obtained by discovery directed to defendant, not Twilio, AT&T, Verizon, T-Mobile or any other telephone provider.[2]

- Second, plaintiff knows that Twilio had no involvement in transmitting any allegedly improper text message to Gragg, the putative class representative.  Though Gragg initially represented to Twilio that he believed that Twilio may have been involved in the transmission of messages to Gragg, Twilio's counsel conveyed to Gragg's counsel that Twilio did not in fact transmit any such message as revealed by Twilio's own investigation as to whether any texts were transmitted to Gragg's number.  Gragg has no information to counter these facts.  Thus, he was forced to concede that no texts were transmitted to him through Twilio.

- Third, Gragg seeks to prove that information was conveyed to the putative class using an ATDS.  Whether the telephone service provider was Twilio, Verizon or any other telephone service provider will not shed light on this question.  Nor would seeking discovery from the telephone provider enable plaintiff to make that showing for class certification or on the merits.  Defendant undoubtedly knows how it generated the text messages in controversy and how defendant identified who would receive those messages.  Gragg will have to seek discovery from defendant or from whoever aided defendant in using a random or sequential number generator, or another apparatus to deliver unsolicited text messages.  That information cannot be obtained from the telephone service provider, which has no visibility into that matter.

- Fourth, any discovery now would be an inappropriate fishing expedition.  Gragg's motion for class certification is due on June 14, 2013.  Plaintiff does not intend to include any information about Twilio in its motion, as evidenced by plaintiff's failure to seek any relief from the scheduling orders in the underlying action.   If anything, plaintiff is seeking information in anticipation of possible arguments that might be raised in opposition to the motion for class certification.  The "standard for relevancy is not so liberal as to allow a party to . . . explore

---

[1] Twilio facilitates the transmission of text messages much like telephone companies facilitate telephone calls.  Twilio thus falls under the FCC's definition of common carrier:  "any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this chapter."  47 U.S.C. § 153.  As a common carrier, Twilio bears no liability for text messages transmitted by its customers, absent specific factual circumstances, none of which exist here.

[2] With no factual support, Gragg opines that RideCharge "hired" Twilio to send RideCharge's text messages through modems and/or servers.  But Twilio acts like any other telephone service provider (e.g. Verizon, AT&T) by providing a platform through which its customers can send text messages.  Gragg does not contend that RideCharge "hired" other telephone companies to facilitate transmission of text messages, nor does he attempt to seek discovery regarding the "means and methods" used by Verizon or AT&T to send text messages.

The Honorable Donna M. Ryu
Page 4

matter which does not presently appear germane on the theory that it might conceivably become so." *Karol v. Med-Trans*, 2012 WL 2339333, at *2 (E.D. Cal. June 19, 2012) (citing *Food Lion v. United Food & Comm'l Workers Union*, 103 F.3d 1007, 1012-1013 (D.C. Cir. 1997); *see also Hansen Beverage Co. v. Innovation Ventures, LLC*, 2009 WL 1916230, at *1 (S.D. Cal. July 1, 2009) (quashing subpoena that appeared to be a "fishing expedition to harass an entity not a party to [the] case."). Plaintiff will have to made a prima facie showing in his opening briefing on the motion for class certification that satisfies the rigorous requirements under Federal Rule of Civil Procedure 23. Plaintiff cannot expect to supplement that showing with new facts introduced for the first time in reply. Given the standard for discovery of relevant evidence, especially as it pertains to a non-party, plaintiff has no basis to seek class discovery from Twilio.

Twilio has no connection to Gragg's claim, and therefore no genuine nexus to this lawsuit. The subpoena is not reasonably calculated to lead to the discovery of admissible evidence, so it should be quashed.

2.     Gragg's Position

The information sought by the May 1, 2013 subpoena is discoverable. The courts have recognized the need to obtain discovery, even from non-parties, for purposes of class certification, as Gragg seeks to do here. Indeed, the "propriety of a class action cannot be determined in some cases without discovery," *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975), and the Ninth Circuit has held that the "more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable." *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977). The Ninth Circuit cases "stand for the unremarkable proposition that often the pleadings along will not resolve the question of class certification and that some discovery will be warranted." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009).

The information that Gragg seeks from Twilio will assist the *RideCharge* court in better understanding if (1) there is a common question of law or fact (commonality), (2) the class representative has issues typical of the purported class (typicality); and (3) common questions or individual issues predominate, factors the *RideCharge* court must consider when deciding whether to certify a class. *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 130 S.Ct. 1431, 1437, 559 U.S. 393 (2010).[3]

The TCPA makes it unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ...." 47 U.S.C. § 227(b)(1). Both voice messages and text messages to wireless numbers are prohibited. *Gragg v. Orange Cab Co. and RideCharge*, 2013 WL 195466, at *2 (W.D. Wash. Jan. 17, 2013). An automatic telephone dialing system ("ATDS") is defined as "equipment

---

[3] Twilio states that "Gragg admits that Twilio operates like a telephone provider by providing a platform through which its customers can send text messages." Gragg does **not** admit this and does not have information to substantiate this point.

The Honorable Donna M. Ryu
Page 5

which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).[4]  Through the purposed class period, RideCharge used different means to send text messages to the purported class members.  RideCharge used its own modems, personal computers, and servers and, at various times, used Twilio's services to send text messages to purported class members.

At the certification stage, the *RideCharge* court will ***not*** need to decide whether the different means and systems used by RideCharge constituted an ATDS.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78, 94 S.Ct. 2140, 2152-53, 40 L.Ed.2d 732 (1974).  But the court will want to know the differences in the means and systems used by RideCharge to send text messages throughout the period to determine if the differences create any common or individualized legal or factual questions regarding the use of an ATDS.  Stated differently, are the different types of modems, software, servers, personal computers, and individuals used by RideCharge to send text messages throughout the class period, differences that would make class certification more or less appropriate?[5]

In short, the *RideCharge* court will likely want to know whether the different means used to send text messages by RideCharge are legally or factually relevant differences.  Gragg, through depositions and testimony, knows the system used by RideCharge to send text messages when they sent those messages ***without*** Twilio's assistance.  But Gragg does not know the means used by RideCharge when, mostly after February 2012, it outsourced the sending of most of its text messages to Twilio.  And that is the information that Gragg seeks in his subpoena and that which Twilio refuses to provide.

Twilio contends that this information about the means and methods used ***by Twilio*** to send text messages could be obtained through discovery of parties or other third-parties.  Not true.  Twilio (not other

---

[4]      An ATDS includes "machines used to dial telephone numbers from a list," *Gragg*, 2013 WL at 195466, at *2 (W.D. Wash. Jan. 17, 2013), and "the evolution of the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective [than dialing randomly or sequentially generated numbers], but that the basic function of such dialing equipment[ ] had not changed—the capacity to dial numbers without human intervention."  *Id., quoting* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 73 Fed. Reg. 6041-01, 6042 (Feb. 1, 2008).

[5]      For example, assume that throughout the relevant period that RideCharge, to send text messages, used a server and modem, but changed modems every couple of years, first using the D1000 modem, then the D1100 modem (which is a little faster), finally, when it hired Twilio for assistance, used Twilio's super-fast modem.  These modems are basically identical, but the modem speeds are different.  In this scenario, although the means used to send text messages are a little different (different modems are used), the question is the same for the entire class period: whether using a server and modem (without any human intervention) to send text messages constitutes an ATDS under the statute.  In this situation, the different methods used by RideCharge would be distinctions without a difference, and they likely would not create any individualized factual or legal issues for the RideCharge court.
         But, on the other hand, assume that throughout the relevant period that RideCharge, to send text messages, used a server and modem until 2012, when it hired Twilio to send its text messages, and at that point, text messages were sent not by server and modem, but by humans who would type out each text message and then push "send" on Twilio's cell phones.  In that scenario, the different means used to send text messages (sometimes without human intervention; sometimes with) are important distinctions, and they would create different factual and legal issues in any class action.

The Honorable Donna M. Ryu
Page 6

parties) understands whether Twilio used modems, servers, or live humans to send the text messages on behalf of RideCharge within the purported class period, and Gragg needs this information from Twilio.[6]

Twilio also argues that the information sought by Gragg is not relevant because RideCharge did not rely on Twilio to send the particular text message to the class representative, Torrey Gragg.  But this misses the point.  Torrey Gragg's lawsuit purports to represent a class of individuals, ***many of whom did, in fact, receive a text message sent by Twilio on behalf of RideCharge***.  Accordingly, the *RideCharge* court, in deciding whether to certify the class, will likely want to understand the differences in the systems used when the purported class members received texts. [7]

## B.    Dispute Regarding Whether Information Sought in Subpoena is Available on Twilio's Web Site

### 1.    Twilio's Position

Twilio attempted to resolve this issue without court intervention by directing Gragg to publicly-available, Twilio-hosted Web sites containing detailed explanations of how the Twilio platform operates.[8]  Gragg's counsel countered that this was insufficient because he supposedly did not understand the language on the Web sites.  "Where discovery is sought from a non-party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of the production on the nonparty."  *Wi-Lan Inc. v. Research in Motion Corp.*, 2010 WL 2998850, at *3 (S.D. Cal. July 28, 2010).  Gragg has access to the non-proprietary information he says he needs to understand the operation of Twilio's platform.  Twilio should not be required to incur further costs and expenses to educate Gragg's counsel.

### 2.    Gragg's Position

Gragg cannot get the information he seeks from the website.  Although the websites provided by Twilio explain that text messages are sent by Twilio to customers, it does not explain the means and methods used to send those text messages, the necessary information to determine if Twilio used an ATDS when sending the text messages on behalf of RideCharge.

---

[6] And Gragg did ask RideCharge.  Indeed, Gragg asked RideCharge about the means and methods used by the company to send text messages.  The company responded by explaining, in broad terms, how it sent text messages and then stated that for part of the purported class period, it sent text messages through Twilio's service.

[7] Twilio contends that Plaintiff shifted theories because Gragg initially thought that the text message sent to the class representative, Mr. Gragg, was issued by Twilio.  Twilio again misses the point.  For purposes of discovery against Twilio, it does not matter whether Twilio or RideCharge sent the specific text message to Mr. Gragg; what is important is the difference between means used to send text messages to Mr. Gragg and ***others in the purported class***, and whether these differences, if any, make class certification more or less appropriate.  Plaintiff would seek discovery against Twilio regardless of whether Twilio sent the actual text message to the class representative.

[8] E.g., http://www.twilio.com/sms/api; https://www.twilio.com/docs/howto/sms-notifications-and-alerts.

The Honorable Donna M. Ryu
Page 7

And if the website does adequately provide this information, Twilio then should, at the very least, simply explain where in the "publicly-available, Twilio-hosted Web sites" this information is provided. Indeed, Gragg's counsel asked Twilio's counsel to explain *where* in these websites it explains *how* Twilio sends it text messages. Twilio refuses to simply point out where, in any Twilio-hosted Web sites," it adequately describes systems used to send text messages on behalf of RideCharge.

### C.   Dispute About Whether Subpoena Seeks Confidential Information

#### 1.   Twilio's Position

Federal Rule of Civil Procedure 45(c)(3)(A)(iii) provides that a court may quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Here, the subpoena seeks testimony regarding the "means and methods relating to how Twilio, Inc. transmitted or assisted in the transmission of any text messages (whether MMS, SMS) for RideCharge or TaxiMagic from August 2011 to present." To the extent plaintiff seeks non-public information, the information is highly proprietary and confidential and disclosure of such non-public information may enable others to gain a competitive advantage over Twilio.

Gragg contends that he seeks testimony solely to explain the publicly-available information on the Twilio Web site, so he is not seeking confidential information. Plaintiff misses the point. Twilio already has directed plaintiff to non-confidential, public information about its services. By seeking additional details about Twilio's operations, plaintiff will necessarily delve into non-public, proprietary trade secrets of a third party that had no involvement in the transmission of the message that the named plaintiff alleges he wrongly received.

#### 2.   Gragg's Position

Gragg specifically framed the subpoena in a way to ***prevent*** the disclosure of ***confidential information***. The subpoena seeks general information manner about whether Twilio used software, modems, servers, SIM cards, or other instruments to send out text messages, and does not seek any information about specific code or specific programs or specific models of instruments, information that arguably could be confidential. And to the extent that Twilio asserts Gragg still seeks confidential information, it has completely failed to meet its burden to show how, why, or even, if, this information is proprietary. *See American Broadcasting Cos. v. Aereo, Inc.*, 2013 WL 1508894, at *1 (N.D. Cal. 2013) ("The party moving to quash a subpoena bears the burden of persuasion.")

Even if the subpoena seeks potential proprietary information, Gragg is not Twilio's competitor, and he will enter into an appropriate protective order for any confidential information potentially disclosed during the deposition. And Gragg will agree to move the *RideCharge* court for permission to file ***any*** Twilio information under seal.

### D.   Dispute About Whether Subpoena is Premature

The Honorable Donna M. Ryu
Page 8


     1.     Twilio's Position

Plaintiff contends the discovery is necessary to respond to an opposition to a class certification motion that has not yet been filed and to address concerns of the *RideCharge* court that have not been made.

A court faced a similar issue in *Battle v. Chicago Cycle, Inc*., 2012 WL 5500507 (N.D. Ohio Nov. 13, 2012), where the district court affirmed a magistrate judge's order quashing a subpoena directed at a non-party in a putative class action.  Because the non-party had no involvement with the named plaintiff, the court found the non-party discovery to be "well beyond the scope of the claims presented."  *Id*. at *6.  The serving party argued that the discovery would be needed for class certification purposes, but the court noted that "there is no guarantee that [class certification] will be granted," and any discovery sought from the non-party was premature, at best.  *Id*. at *6 n.6.  Gragg argues that *Battle* is distinguishable because "no class certification had been sought" in *Battle*.  That's the whole point.  Because no motion for class certification had been filed in *Battle*, the non-party subpoena directed at class-related discovery was premature.

The *Soto* case cited by Gragg offers no relief.  In *Soto*, the court ruled that the discovery was proper in part because plaintiffs showed they attempted but failed to obtain the relevant information from the parties in the underlying action.  *Id*. at 505.  Here, Gragg makes no representations regarding whether he has requested this discovery from the underlying parties to the lawsuit.  And Twilio has already directed plaintiff to Web sites that provide the information he seeks.  Unlike the case in *Soto*, Gragg has other options.  The subpoena should be quashed.

Gragg will have to demonstrate commonality, typicality and whether he is an adequate representative in his moving papers, due on June 14, 2013.  Plaintiff has no reasonable expectation of obtaining information from Twilio in advance of that filing and did not request any relief from the court in the underlying action to pursue a subpoena directed to Twilio.

     2.     Gragg's Position

This subpoena is not premature.  Regardless of the arguments that defendant  RideCharge will make in the class certification briefing, the *RideCharge* court will have to decide whether it is appropriate to allow Gragg to represent a class of other individuals, some of whom (1) received text message sent directly made by RideCharge, and others whom (2) received text messages from Twilio, on behalf of RideCharge.  And in making this determination, the RideCharge court will want information as to any differences between the purported class members, including any differences in the methods used to send them text messages.  Whether the defendant makes the particular argument is besides the point.[9]

---

[9] Twilio also appears to state that Gragg will have not ability to get this information to the court, as the class certification brief is due on June 13, 2013.  Not so.  If Gragg obtains permission to depose Twilio, Gragg will provide this to the court in a

The Honorable Donna M. Ryu
Page 9

And Twilio's reliance on *Battle v. Chicago Cycle, Inc*., 2012 WL 5500507 (N.D. Ohio Nov. 13, 2012) is misplaced.  There, the court denied the objections to a magistrate's order refusing to allow pre-certification discovery against a third-party in response to a subpoena that requested twenty-two separate requests and asked for several boxes of documents.  But there, unlike here, the *Battle* plaintiff apparently did not even ***attempt*** to argue that the discovery sought was relevant to the issue of class certification, *id*. at *6, like it is here.  Indeed, in *Battle*, "no class certification had been sought."  *Id*.  Further, unlike the situation here, the magistrate court found that the Plaintiff could obtain the necessary documents from another source.  *See* Magistrate Order, *Battle v. Chicago Cycle, Inc*., 1:11MC61, at 6-8 (N.D. Ohio Oct. 18, 2011).  Further, the magistrate court held that the fact the case was pre-certification was a mere factor to consider when deciding that the incredibly burden was not appropriate at that time.  *Id*. at 7-8 (holding that the request was overbroad based, in part, on the fact that certification had not been sought).  But here, the burden is minimal, and there is no reason not allow discovery.

Indeed, the motion before this Court similar to the recent matter before the Court in S*oto v. Castlerock Farming and Transport*, 282 F.R.D. 492 (E.D. Cal. 2012).  There, plaintiffs filed a purported class action seeking overtime wages, and, pre-certification, subpoenaed a non-party for documents.  The court allowed the discovery — which encompassed tens of thousands of documents — because the information "could assist," id. at 505, the court in deciding issues of numerosity, commonality, and typicality, and that "to deny discovery that is necessary to determine the existence of a class is an abuse of discretion," *id*. at 506.  This Court should reach the same decision here.

> ### E.      Dispute About Twilio's Burden

Twilio contends that the subpoena is unduly burdensome.  At best, the subpoena seeks anticipatory discovery regarding information that has already been provided to Gragg's counsel.  As a non-party, Twilio should not be required to bear unnecessary litigation expenses.

Gragg contends that, under the circumstances, the subpoena is not unduly burdensome.  Indeed, Gragg seeks no documents, but rather a broad overview of the general methods used (servers? Modems?  SIM cards?) by Twilio to send text messages on behalf of RideCharge, and there are likely several individuals in the company (if not all of them) that could easily answer these questions in a few minutes.  Twilio has failed to show this subpoena is, in anyway, burdensome.  *See EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir. 1993) ("[T]he [subpoenaed party] must show that compliance would unduly disrupt and seriously hinder normal operations of the business.").

## III.     CONCLUSION

Twilio concludes by stating the following:  Gragg concedes that Twilio was not involved in sending any text messages to Mr. Gragg.  Gragg also admits that Twilio plays the same role as a telephone service

---

supplement brief, in his reply, or in some other fashion (that is, by seeking leave from the court to provide information from Twilio's deposition to the court).

The Honorable Donna M. Ryu
Page 10

provider.  Gragg has not sought information from any traditional carrier because such information is irrelevant to the question of whether RideCharge used an ATDS to transmit unsolicited text messages.  Gragg also fails to demonstrate reasonable diligence in obtaining the information he seeks from parties within the underlying lawsuit or from publicly-available sources.  To avoid court intervention, Twilio directed Gragg to non-confidential, public information.  Any additional information could be used to Twilio's detriment in the marketplace.  As a non-party, Twilio should not be required to disclose its proprietary information, and the Court should quash the subpoena.

Gragg concludes by stating the following:

Twilio refuses to provide this Court with *any* compromise on this issue.  Gragg has attempted to get a limited deposition.  Twilio refused.  Gragg attempted to get a declaration.  Twilio refused.  And Gragg attempted to get someone to simply direct Gragg where on these purpoted public websites Gragg can obtain information about the means and methods used to send text message.  Twilio refused.

To the contrary, in an effort to resolve this dispute, Plaintiff Torrey Gragg, suggests the following compromise: (1) a deposition, ***not lasting more than two hours***, to explain, in general terms, the means and methods used by Twilio when it sent text messages on behalf of its client, RideCharge  Gragg will also agree to an appropriate protective order and will agree to move the RideCharge court to file under seal any information that it obtains from any deposition of Twilio.

Gragg is entitled to limited, general information that he seeks from Twilio.  This information will assist the *RideCharge* court in understanding the differences in the means and methods used to send text messages throughout the purported class period, and whether those differences make class certification more or less appropriate.  Further, the burden on Twilio is almost non-existent, as this deposition would take minimal time, Gragg does not seek proprietary information, and, to the extent it does, would agree to any reasonable protective order and would agree to try to file any information under seal.

Respectfully submitted,

/s/ Patrick S. Thompson
Patrick S. Thompson (SBN 160804)
*pthompson@goodwinprocter.com*
GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Fl.
San Francisco, CA  94111
Tel.:  415.733.6000
Fax:  415.677.9041

Attorneys for Non-Party Twilio, Inc.

/s/ Albert H. Kirby
Albert H. Kirby (SBN 204266)
*ahkirby@kirby-legal.com*
93 S. Jackson Street, Suite 63230
Seattle, WA  98104
Tel.:  206.414.9950
Fax:  866.845.6302

Attorneys for Plaintiff Torrey Gragg

## <u>CERTIFICATE OF SERVICE</u>

      I, Patrick S. Thompson, hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on all counsel who are not served through the CM/ECF system on June 6, 2013.

                                     /s/ Patrick S. Thompson